## PORTSMOUTH WATER AND FIRE DISTRICT

v.

## RHODE ISLAND ENERGY FACILITY SITTING BOARD, et al.

No. 98–180–M.P.

Supreme Court of Rhode Island.

Sept. 9, 1998.

Howard E. Walker, Gerald John Petros, Joseph D. Whelan, Providence.

Harris Weiner, Joseph S. Larisa, Sr.; Adrienne G. Southgate, Elizabeth A. Keller; James E. Purcell, Dennis J. Duffy, Providence.

### ORDER

This case was heard by the Supreme Court upon motions filed by the respondents Tiverton Power Associates (Tiverton Power) and Rhode Island Energy Facilities Sitting Board (Board) to affirm pursuant to Rule 16(g) of the Supreme Court Rules of Appellate Procedure. After hearing the arguments of counsel and reviewing the memoranda of the parties this Court grants the motion to affirm the decision and order of the Board, which granted a license to Tiverton Power to build and operate a gas-fired power production facility in the town of Tiverton. The facts of this case are largely undisputed.

On April 1, 1997, Tiverton Power filed an application with the Board for a license to construct a 265–megawatt gas-fired power production facility (facility) pursuant to the provisions of the Energy Facility Sitting Act (Act), codified in G.L.1956 chapter 98 of title 42. The facility has been designed to utilize dry combustion turbine technology and dry cooling, which drastically reduces the amount of water required by traditional gas turbine facilities. Tiverton Power has entered into a retail sales contract with Stone Bridge Fire District (Stone Bridge) to supply water to the facility. The petitioner, Portsmouth Water and Fire District (Portsmouth), is a wholesale customer of Stone Bridge and purchases a significant portion of its water supply from Stone Bridge. It is undisputed that Stone Bridge has an adequate water supply to service the needs of its customers. However, the evidence suggests that Stone Bridge may reach or exceed its capacity to treat an adequate amount of water to meet demand during peak periods and therefore may need to expand its treatment capacity in order to service future needs. Stone Bridge is not a party to this proceeding, but it was disclosed at oral argument that Stone Bridge willingly entered into a retail supply contract with Tiverton Power. Portsmouth, however, has objected to the issuance of the permit on the ground that Portsmouth's water supply may be impacted by the addition of Tiverton Power to Stone Bridge's customer base.

Several public hearings were conducted in accordance with the Act. Representatives of Portsmouth appeared before the Board and voiced their concerns regarding the ability of Stone Bridge to treat an adequate amount of water during peak demand periods. Although Portsmouth specifically indicated that it had no objection to the issuance of the permit, Portsmouth nonetheless maintained that the Board should make provisions for the allocation of those expansion costs. Portsmouth suggested that Tiverton Power should be required as a condition of its license to fund the expansion of Stone Bridge's treatment facilities.

By decision and order dated March 25, 1998, the Board granted the application to construct the facility and made detailed findings of fact in which it addressed Portsmouth's concern about Stone Bridge's treatment capacity. The Board observed:

"There could be a capacity issue between Stone Bridge and its customers, but there is no supply issue. Stone Bridge may need to make some future capacity improvements. The Board concluded that Tiverton Power should be required to address any adverse, unintentional consequences of the use of Stafford Pond. However, the applicant is only one of Stone Bridge's retail customers, and it cannot be required to disproportionately bear the cost of any future capacity improvements."

On April 6, 1998, Portsmouth filed a petition for certiorari pursuant to § 42–98–12,[1] alleging that the findings of the Board were clearly erroneous and that the Board violated the Act by issuing its decision and order without notice to Portsmouth and without conducting a public hearing in the town of Portsmouth. Tiverton Power, joined by the Board, moved to dismiss the petition on the ground that it was not timely filed. The motion to dismiss was denied by this Court on April 17, 1998, without exposition. We shall not decide the motion to affirm, assuming without deciding, that it was timely filed. For the following reasons we conclude the petition for certiorari is without merit, thus we affirm the decision and order of the Board.

Portsmouth's complaint rests on the supposition that the addition of Tiverton Power to Stone Bridge's customer base will necessitate the expansion of Stone Bridge's treatment facilities. Although Portsmouth repeatedly stated that it had no objection to the issuance of the license, by letter dated January 22, 1998, Portsmouth suggested that the Board condition its approval upon an upgrade of the current facilities, presumably at Tiverton Power's expense. Portsmouth maintains that the Board made no explicit findings of fact concerning the water supply and thus it was clearly erroneous. We disagree.

After reviewing the record we are satisfied that the Board was appraised of Portsmouth's concerns about future treatment capacity and the need for expansion and that these concerns were properly addressed in its decision and order. The Board simply declined to follow Portsmouth's suggestion to condition its approval of Tiverton Power's license upon a requirement that Tiverton Power bear the cost of any future capacity improvements. We conclude that this issue was entirely factual and that the record amply demonstrates sufficient evidence to support the Board's findings and decision thereon. The decision is not clearly erroneous.

We are also satisfied that Portsmouth's challenge to the lack of actual notice of the proceedings or the fact that the Board did not conduct within the town of Portsmouth is without merit. Portsmouth appeared before the Board, was represented by counsel, submitted both oral and written testimony, and expressly advised the Board that it had no objections to the issuance of the license. We therefore conclude that Portsmouth waived any right to raise these issues on appeal.

Accordingly, the petition for certiorari is denied, the writ previously issued is quashed, and the motion to affirm is granted. The case is hereby remanded to the Board.

---

1. General Laws 1956 § 42–98–12 states:

   "(A) The licensing decision issued by the siting board shall constitute the sole, final, binding, and determinative regulatory decision within the state for purposes of siting, building, operating, or altering a major energy facility.

   "(B) Any person aggrieved by a decision of the board may within ten (10) days from the date of ratification of the decision, obtain judicial review of the decision in the manner and according to the standards and procedures provided in chapter 5 of title 39."